## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HOLDING RENAISSANCE PROPERTY, LLC**  **CIVIL ACTION**

**VERSUS**  **NO. 23-1594**

**NATIONSTAR MORTGAGE, LLC**  **SECTION: D (4)**

## ORDER AND REASONS

Before the Court is Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper's Motion to Dismiss Plaintiff's Complaint.[1]  Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the noticed submission date.  The instant Motion had a submission date of July 11, 2023.[2]  As of the date of this Order, no memorandum in opposition has been submitted.  Thus, the Motion is unopposed.

After careful consideration of the Motion and the applicable law, the  Motion is **GRANTED in part** and **DENIED in part**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2023, Holding Renaissance Property, LLC ("HRP") filed a Complaint in this Court, regarding an attempted foreclosure on property HRP acquired from Cheryl Smith Charles.[3]  HRP alleges that on or about November 24, 2009, Ms. Charles executed a mortgage agreement (the "Mortgage") consisting of a security instrument and promissory note (the "Note") in favor of Bank of America

---

[1] R. Doc. 10.

[2] *Id.*

[3] R. Doc. 2.

regarding property located at 2706-08 Robert Street in New Orleans, Louisiana.[4]

HRP alleges that Ms. Charles transferred the property to HRP on or about September

29, 2020 by Act of Sale and Assumption, wherein HRP assumed the mortgage

indebtedness on the property, in addition to all right, title, and interest in the

property.[5] HRP asserts that on November 18, 2018, Mortgage Electronic Systems, as

nominee for Bank of America, assigned the Mortgage and the Note to Nationstar

Mortgage, LLC d/b/a Mr. Cooper ("Nationstar"), through which Nationstar became

the lender and servicer and assumed the contractual rights and obligations of the

Mortgage and the Note previously held by Bank of America.[6]  HRP further asserts

that, "At all times material herein, Nationstar alleged default and that default began

on July 1, 2018."[7]  HRP alleges that Nationstar filed a Petition to Enforce Security

---

[4] *Id.* at ¶¶ 3-4.

[5] *Id.* at ¶ 5.  Nationstar alleges in its Motion that Ms. Charles, through her counsel, Gregory Swafford, filed a Motion for Preliminary Injunction and Permanent Injunction to Arrest Seizure and Sheriff Sale in the state court action on or about September 30, 2020.  R. Doc. 10-1 at p. 2, n.1.  Nationstar further alleges that Ms. Charles subsequently executed an Agreement to Purchase or Sell Real Estate on October 29, 2020, selling the property at issue to Mr. Swafford through his limited liability company, Holding Renaissance Property, LLC.  R. Doc. 10-1 at p. 2.  Nationstar points out that Ms. Charles executed the Agreement on October 29, 2020, but that HRP recorded the Agreement on October 8, 2020 in the Orleans Parish mortgage and conveyance records.  *Id.* (*citing* R. Doc. 10-2 at p. 1). Nationstar also alleges that Ms. Charles executed a Power of Attorney on September 29, 2020, authorizing Mr. Swafford to sell the property at issue, which was recorded in Orleans Parish on October 8, 2020.  R. Doc. 10-1 at p. 3 (*citing* R. Doc. 10-2 at pp. 4-5).  Nationstar alleges that Ms. Charles and Mr. Swafford executed an Act of Sale and Assumption on September 29, 2020, which was recorded in Orleans Parish on November 22, 2021.  R. Doc. 10-1 at p. 3 (*citing* R. Doc. 10-2 at pp. 8-10).  Nationstar asserts in its Motion that Ms. Charles and HRP never notified Nationstar of the sale or the agreement to assume the Mortgage and, as such, "the actions were a prohibit [sic] transfer of title without Nationstar [sic] knowledge or consent."  R. Doc. 10-1 at p. 3.  Nationstar further asserts in its Motion that on August 16, 2022, Ms. Charles moved to dismiss her Motion for Preliminary Injunction and Permanent Injunction to Arrest Seizure and Sheriff Sale in the state court action.  R. Doc. 10-1 at p. 3 (*citing* R. Doc. 10-2 at p. 12).  Nationstar asserts that a sheriff's sale was scheduled for June 1, 2023, but that it was cancelled due to HRP filing the instant action.  R. Doc. 10-1 at p. 3.

[6] R. Doc. 2 at ¶¶ 6-7.  The Court notes that the "Corporate Assignment of Mortgage" attached to the Complaint shows that Mortgage Electronic Registration Systems, Inc., as nominee for Bank of America, assigned Ms. Charles' Mortgage and Note to Nationstar.  R. Doc. 2-3 at pp. 21-23.

[7] R. Doc. 2 at ¶ 8.

Interest by Executory Process in Louisiana state court on December 27, 2018, asserting a claim against HRP in the amount of $249,281.68, the principal amount remaining on the Note and Mortgage, plus interest, attorney's fees and costs.[8]

While not a model of clarity, HRP seems to allege that Nationstar violated the National Housing Act (the "NHA") and regulations issued by the United States Department of Housing and Urban Development ("HUD") by failing to provide HRP with pre-foreclosure screening, loss mitigation, notice of default, and notice of acceleration before seeking to foreclose on the property, and by failing to provide HRP with notice of the transfer, assignment, and loan servicing to Nationstar.[9]   HRP seems to assert a breach of contract claim on the basis that these actions were taken in contravention of Paragraph 6(B) of the Note, and because the NHA and its corresponding HUD regulations are "explicitly incorporated in the Security Instrument and Note."[10]   HRP also alleges that Nationstar violated HUD regulations and the NHA by failing to provide Ms. Charles, the previous owner, pre-foreclosure counseling from July 1, 2018 through October 1, 2018, and by failing to send her a delinquency notice, failing to contact or make reasonable attempts to contact Ms. Charles, failing to conduct, or make a reasonable effort to arrange, a face-to-face meeting prior to foreclosing, failing to conduct a loss mitigation evaluation prior to foreclosing, and failing to provide a default notice, all as required by 24 C.F.R. § 203.602, *et seq*. and 24 C.F.R. § 650.[11]

---

[8] *Id*. at ¶ 28.  *See*, R. Doc. 2-3 at p. 1, ¶¶ 2-3.
[9] R. Doc. 2 at ¶¶ 9-16.
[10] *Id*. at ¶¶ 15 & 42.  *See, Id*. at ¶¶ 9, 10, 12, & 16.
[11] *Id*. at ¶¶ 17-18.

HRP further asserts that Nationstar failed to provide Ms. Charles with notice of its intent to foreclose and accelerate at any time between July 1, 2018 and December 27, 2018, as required by the NHA and its accompanying HUD regulations.[12]   HRP asserts that Ms. Charles was entitled to loss mitigation alternatives to maintain ownership of the home and that she would have exercised the ability to do so if Nationstar had contacted HRP to discuss alternatives prior to accelerating and initiating foreclosure on December 27, 2018, or if Nationstar had advised Ms. Charles of the transfer of ownership and servicing of the Note.[13]   HRP then alleges that Ms. Charles suffered mental stress, embarrassment, anxiety, and loss of use resulting from initiation of the foreclosure proceeding, "of which transfer of all rights, title and interest to the property was acquired by Petitioner."[14]   HRP also asserts that it believes Bank of America certified to Nationstar upon assignment that it had explored non-foreclosure outcomes or pre-foreclosure counseling with HRP, to no avail, and that Nationstar relayed this information to its counsel prior to filing the foreclosure suit.[15]   HRP claims that Nationstar failed to allege or submit evidence in its foreclosure suit that all conditions precedent were met, as promulgated by the HUD Secretary and required by Paragraph 6(B) of the Note, prior to acceleration and initiation of foreclosure proceedings.[16]   HRP also alleges that Nationstar failed to comply with Paragraph 6(B) because there was not enough time

---

[12] *Id.* at ¶ 19.
[13] *Id.* at ¶ 23.
[14] *Id.* at ¶ 25.
[15] *Id.* at ¶¶ 20 & 21.
[16] *Id.* at ¶ 22.

to provide a notice of default and acceleration with a 30-day cure period where the Mortgage and the Note were assigned to Nationstar on November 18, 2018 and the foreclosure proceeding was filed on December 27, 2018.[17]

HRP further alleges that Nationstar was not entitled to proceed by executory process in enforcing the Note and the Mortgage because Nationstar failed to comply with the "strict requirements of authentic evidence" required by La. Code Civ. P. art. 2635.[18]   HRP alleges that Nationstar failed to mail by first class mail a notice of default before accelerating the Note, that neither HRP nor Ms. Charles received written notice of default and acceleration from Nationstar, as required by the Note, and that Nationstar failed to attach the notice of default and notice of acceleration to its Petition to Enforce Security Interest by Executory Process (the "Petition for Executory Process."[19]   While Nationstar alleged in its Petition for Executory Process that it provided notice of default as required by the Mortgage and the Note, HRP asserts that Nationstar failed to attach authentic evidence of its proof of notice of default, which prohibits the use of executory process and the resultant seizure.[20] HRP asserts a claim for wrongful seizure based upon a lack of authentic evidence to justify issuance of the writ of seizure and sale, as required by La. Code Civ. P. 2635.[21] HRP seeks declaratory relief in the form of a determination of the rights, obligations, and interest of the parties with respect to the property, a determination of the validity

---

[17] *Id*. at ¶ 24.
[18] *Id*. at ¶¶ 27 & 28.
[19] *Id*. at ¶¶ 27, 29, 30, & 31.
[20] *Id*. at ¶¶ 32 & 34.
[21] *Id*. at ¶ 34.

of the issuance of the writ of seizure and sale, a determination of the validity of acceleration and foreclosure based upon payment default, a determination regarding whether Nationstar complied with the NHA and its accompanying HUD regulations, as explicitly incorporated in the Mortgage and the Note, prior to acceleration and foreclosure, and a determination of whether Nationstar should be ordered to proceed by ordinary process.[22]  HRP seeks damages as well as attorney's fees and costs.[23]

On June 6, 2023, Nationstar filed the instant Motion to Dismiss, asserting that the Complaint "is nothing more than an improper shotgun pleading which lists out each of Plaintiff's purported claims without providing any factual allegations in support."[24]  Nationstar contends that even if HRP had provided additional facts, its claims against Nationstar all fail as a matter of law.[25]  Nationstar argues that HRP's claims that are based upon alleged violations of HUD and the NHA must be dismissed with prejudice because neither HUD nor the NHA provide a private right of action.[26] Nationstar also asserts that HRP lacks standing to bring "a RESPA claim,"[27] that HRP does not have a cause of action under Louisiana's Credit Agreement statutes,

---

[22] *Id*. at ¶¶ 38-45.
[23] *Id*. at ¶ 46.  The Court notes that HRP also sought a temporary restraining order and preliminary injunctive relief to enjoin a Sheriff's sale of the property that was scheduled for June 1, 2023.  *Id*. at ¶¶ 35-37.  On May 16, 2023, after the Complaint was filed, HRP filed a Motion for Temporary Restraining Order and Preliminary Injunctive Relief, seeking to arrest execution of the writ of seizure and sale of the property that was scheduled for June 1, 2023.  R. Doc. 7.  After receiving several electronic communications from HRP's counsel confirming that the sale had been cancelled and that HRP was no longer requesting injunctive relief, the Court issued an Order and Reasons on May 31, 2023 denying the Motion as moot.  R. Doc. 9.  As such, HRP's request for injunctive relief in its Complaint is now moot.
[24] R. Doc. 10-1 at p. 1.
[25] *Id*.
[26] *Id*. at pp. 1 & 6-7.
[27] *Id*. at pp. 7-8.

La. R.S. 6:1122, *et seq.*,[28] and that Nationstar has the right to enforce the Note and the Mortgage through Louisiana's executory process.[29]  Alternatively, if the Court does not dismiss all of HRP's claims, Nationstar asks the Court to order HRP to file a more definite statement under Fed. R. Civ. P. 12(e).[30]

As of the date of this Order and Reasons, HRP has not filed a response to Nationstar's Motion.  Thus, the Motion is unopposed.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[31]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[32]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[34]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the

---

[28] *Id*. at pp. 8-10.

[29] *Id*. at pp. 10-17.

[30] *Id*. at pp. 17-18.

[31] Fed. R. Civ. P. 12(b)(6).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[33] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[34] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

plaintiff.[35]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[36]

The Fifth Circuit has recognized that motions to dismiss under Rule 12(b) are generally viewed with disfavor.[37]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[38]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[39]

## III.   ANALYSIS

### A. HRP has alleged sufficient facts to state a claim for alleged violations of the NHA and HUD regulations.

In seeking dismissal of HRP's claims for alleged violations of the NHA and HUD regulations, Nationstar asserts that neither the NHA nor any HUD regulation provides for a private right of action.[40]  As HRP correctly points out, it is well established that the NHA and HUD regulations concern only the relationship between the mortgagee and the government, and give the mortgagor no claim to a duty owed nor a remedy for failure to follow such regulations.[41]  "Because the aim of

---

[35] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[36] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[37] *Turner v. Cain*, 647 Fed.Appx. 357, 361 (5th Cir. 2016) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)) (internal quotation marks omitted

[38] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[39] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

[40] R. Doc. 10-1 at pp. 6-7 (citing authority).

[41] *Baker v. Countrywide Home Loans, Inc.*, Civ. A. No. 3:08-CV-0916-B, 2009 WL 1810336, at *3 (N.D. Tex. June 24, 2009) (Boyle, J.) (quoting *Leggette v. Washington Mut. Bank, FA*, Civ. A. No. 3:03-CV-

the FHA and the HUD regulations is to govern the relationship between mortgagees and the government, courts have recognized that violations of such provisions fail to give rise to a private cause of action."[42]  The Court therefore agrees that Nationstar's alleged failure to comply with the NHA and HUD regulations alone does not give rise to a viable cause of action.[43]

While the Court agrees that HRP cannot sustain a cause of action for breach of contract or wrongful foreclosure on the basis that Nationstar failed to comply with the NHA and its accompanying HUD regulations, that does not end the inquiry.  HRP also alleges a claim for breach of contract based upon Nationstar's failure to comply with "the NHA and its accompanying HUD regulations as explicitly incorporated in the Security Instrument and Note."[44]  The Fifth Circuit has held that, "Federal statutes and regulations can form the basis of a breach-of-contract claim if the parties

---

2909-D, 2005 WL 267699, at *3 (N.D. Tex. Oct. 19, 2005) (Fitzwater, J.) (quoting *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977))).  *See, Moses v. Banco Mortgage Co.*, 778 F.2d 267, 271-72 (5th Cir. 1985) ("We hold that neither the Federal Housing Act nor the HUD regulation was intended directly to benefit . . . owners of low income housing"); *Mitchell v. Chase Home Finance LLC*, Civ. A. No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. March 4, 2008) (Kinkeade, J.) ("As other courts have observed, the regulations promulgated under the national Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations") (citing authority); *Fantroy v. Countrywide Home Loans, Inc.*, Civ. A. No. 3:06-CV-1889-K, 2007 WL 2254941, at *2 (N.D. Tex. July 24, 2007) (Kinkeade, J.) (same).

[42] *Baker*, Civ. A. No. 3:08-CV-0916-B, 2009 WL 1810336 at *3 (citing *Moses*, 778 F.2d at 272, n.2; *Roberts*, 556 F.2d at 360-61; *Fantroy*, Civ. A. No. 3:06-CV-1889-K, 2007 WL 2254941 at *2; *Leggette*, Civ. A. No. 3:03-CV-2909-D, 2005 WL 2679699 at *3).

[43] *Baker*, Civ. A. No. 3:08-CV-0916-B, 2009 WL 1810336 at *3 (citing *Mitchell*, Civ. A. No. 3:06-CV-2099-K, 2008 WL 623395 at *3 ("To the extent that Plaintiffs base their claim of wrongful acceleration on these regulations, it must be dismissed")).  *See, Richards v. Wells Fargo Bank, N.A.*, Civ. A. No. 18:CV-00084-DC, 2019 WL 13194132, at *3, n.1 (W.D. Tex. Feb. 4, 2019) (Counts, J.) ("The Court agrees that Defendant's failure to comply with HUD regulations alone does not give rise to a viable cause of action.") (citation omitted).

[44] R. Doc. 2 at ¶¶ 15, 19, & 21.

expressly incorporate them into their contract."[45]   Here, both the Note and the Mortgage expressly provide that the lender's ability to seek acceleration and foreclosure is limited by the regulations promulgated by the HUD Secretary.   For instance, the Note provides the following:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.   .  .  .   In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.   This Note does not authorize acceleration when not permitted by HUD regulations.   As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.[46]

The Note further defines "Borrower" as "each person signing at the end of this Note, and the person's successors and assign," and defines "Lender" as "Bank of America, N.A. and its successors and assigns."[47]   The Mortgage document similarly provides the following:

> 9. Grounds for Acceleration of Debt.
> (a) Default.  Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: . . . .
> (b) Sale Without Credit Approval.  Lender shall, if permitted by applicable law . . . and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if: . . . .
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in

---

[45] *Hernandez v. Home Sav. Ass'n of Dallas County*, 606 F.2d 596, 600-01 (5th Cir. 1979) (finding that HUD regulations incorporated into mortgage documents become part of the contract); *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed.Appx. 861, 864 (5th Cir. 2013) (citing *Franklin v. BAC Home Loans Servicing, L.P.*, Civ. A. No. 3:10-CV-1174-M, 2011 WL 248445, at *2 n.14 (N.D. Tex. Jan. 26, 2011) (collecting cases)).

[46] R. Doc. 2-3 at pp. 12-13.

[47] *Id.* at p. 12.

> full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.[48]

Other courts in this Circuit have held that this language suffices to show that the parties explicitly incorporated the HUD regulations into their agreement.[49] Additionally, when HUD regulations are incorporated into the mortgage instruments, as in this case, "a breach of contract claim is cognizable."[50]  The Court finds that because the parties incorporated HUD regulations into the Note and the Mortgage, HRP has stated a plausible breach of contract claim, and Nationstar's Motion is denied as to that claim.

### B. HRP has alleged sufficient facts to show that it has standing to sue Nationstar under RESPA.

Nationstar's next argument in favor of dismissal is less clear to the Court. Nationstar cites a provision of the Mortgage that requires the borrower to occupy the property as her principal residence and a provision that allows Nationstar to seek acceleration if all or part of the property is sold or transferred and the property is not occupied by the purchaser as his or her principal residence.[51]  Nationstar asserts that, "In addition to the Borrower and Plaintiff failing to notify Nationstar of their transfer of the Subject Property and assumption of the mortgage, Plaintiff is not considered a borrower of the mortgage."[52]  Nationstar then asserts that, "RESPA requires a

---

[48] *Id.* at p. 17, ¶ 9.
[49] *Richards*, Civ. A. No. MO:18-CV-00084-DC, 2019 WL 13194132 at *3 & n.1; *Baker*, Civ. A. No. 3:08-CV-0916-B, 2009 WL 1810336 at *3, n.2 & 5 (quoting *Hernandez*, 606 F.2d at 600-01) (internal quotation marks omitted).
[50] *Richards*, Civ. A. No. MO:18-CV-00084-DC, 2019 WL 13194132 at *3 (collecting cases).
[51] R. Doc. 10-1 at pp. 7-8 (*quoting* R. Doc. 2-3 at pp. 16 & 17).
[52] R. Doc. 10-1 at pp. 7-8 (*quoting* R. Doc. 2-3 at pp. 16 & 17).

servicer, upon receiving a complete loss mitigation application, to notify the borrower that the borrower is not eligible for a loss mitigation option before proceeding to foreclosure."[53]  Nationstar concludes that, "Plaintiff is not a borrower on the Loan and does not qualify as a successor in interest under any of Regulation X's definitions. Therefore, it lacks standing to bring a RESPA claim."[54]

Although not explained by Nationstar, Section 1024 of the Code of Federal Regulations implements the Real Estate Settlement Procedures Act of 1974 ("RESPA"), and 12 C.F.R. § 1024.41 "describes the procedures that mortgage servicers must follow when processing loss mitigation applications."[55]  Regulation X, contained in 12 C.F.R. § 1024(f)(2)(i), "requires a servicer, upon receiving a complete loss mitigation application, to notify the borrower that the borrower is not eligible for a loss mitigation option before proceeding to foreclosure."[56]  At the outset, the Court points out that the Complaint does not reference RESPA, Regulation X, or 12 C.F.R. § 1024(f)(2)(i).[57]  While HRP repeatedly alleges that Nationstar failed to provide HRP and/or Ms. Charles, the former owner, "loss mitigation" prior to seeking foreclosure,[58] and further alleges that, "[Mrs.] Charles was entitled to loss mitigation alternatives to maintain ownership of the home and would have exercised the ability to do so if Nationstar had contacted Petitioner to discuss alternatives prior to accelerating and

---

[53] R. Doc. 10-1 at p. 8 (quoting *Guerrero v. Bank of Am. N.A.*, Civ. A. No. H-17-239, 2017 WL 2876504, at *4 (S.D. Tex. July 6, 2017) (Miller, J.)) (internal quotation marks omitted).
[54] R. Doc. 10-1 at p. 8.
[55] *Germain v. US Bank Nat'l Ass'n as Tr. For Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 273 (5th Cir. 2019) (*citing* 12 C.F.R. § 1024.41); *Guerrero*, Civ. A. No. H-17-239, 2017 WL 2876504 at *4.
[56] *Guerrero*, Civ. A. No. H-17-239, 2017 WL 2876504 at *4 (*citing* 12 C.F.R. § 1024.41(f)(2)(i)).
[57] *See, generally*, R. Doc. 2.
[58] R. Doc. 2 at ¶¶ 9-13 & 15-16.

initiating foreclosure on December 27, 2018,"[59] HRP does not allege that either it or Ms. Charles submitted a complete loss mitigation application, as required by Regulation X.  Thus, it is unclear to the Court whether HRP has alleged a RESPA violation in its Complaint.

That, however, is not the issue before the Court at this juncture; nor is the issue of the timing of the sale of the property to HRP.[60]  Instead, Nationstar argues that HRP "lacks standing to bring a RESPA claim."[61]  Regarding whether HRP has standing to assert a RESPA claim, HRP has alleged that Ms. Charles transferred the property to it on September 29, 2020, through which HRP "did assume the mortgage indebtedness on the property, in addition to all right, title and interest in the subject property."[62]  HRP also attached to its Complaint a copy of the Act of Sale and Assumption executed by Ms. Charles and HRP, which specifies that, "said Purchaser declared that it does by these presents stipulate, agree and bind itself and its heirs and assigns to assume all the obligations, agreements and covenants embodied in the aforesaid Act of Sale and Mortgage and Note to the full acquittance and discharge of Vendor . . . ."[63]  Nationstar does not address these allegations in its Motion, nor does Nationstar acknowledge the Mortgage instrument's definition of "Borrower" as

---

[59] Id. at ¶ 23.
[60] See, R. Docs. 2-3 and 2-4.  The Exhibits attached to the Complaint reflect that Nationstar's Petition to Enforce Security Interest by Executory Process was filed in state court on December 27, 2018.  R. Doc. 2-3 at pp. 1-4.  The state court judge signed an Order granting the Petition and ordering the seizure and sale of the property on January 17, 2019.  Id. at p. 25.  The Act of Sale between Ms. Charles and HRP for that same property was executed on September 29, 2020.  R. Doc. 2-4.  That same Act of Sale was filed with the Clerk of Court on November 22, 2021.  Id. at pp. 4-5.
[61] R. Doc. 10-1 at p. 8.
[62] R. Doc. 2 at ¶ 2.
[63] R. Doc. 2-4 at p. 3.

including the person signing the Note "and the person's successors and assigns."[64]
Viewing HRP's well-pleaded facts as true and viewing those facts in the light most
favorable to HRP, as the Court is bound to do,[65] the Court finds that HRP has alleged
sufficient facts as to this claim.

### C. HRP's claims are not barred by the Louisiana Credit Agreement Statute, La. R.S. 6:1121, *et seq.*

Nationstar seems to assert that all of HRP's claims are based upon the
mortgage obligation between Ms. Charles and Nationstar, and are therefore barred
under the Louisiana Credit Agreement Statute, La. R.S. 6:1121, *et seq.*, because there
is no written agreement between HRP and Nationstar regarding the Mortgage.[66]
Nationstar claims that any transfer or assumption of the mortgage obligation was
without Nationstar's express written consent, as required under the terms of the
Mortgage.[67]  Nationstar further asserts that banks generally do not owe duties to
non-customers, and points out that HRP does not allege that it was Nationstar's
customer.[68]

The Louisiana Credit Agreement Statute "operates as a 'statute of frauds' for
the credit industry," and "[i]ts purpose is 'to prevent potential borrowers from
bringing claims against lenders based on oral agreements.'"[69]  A "credit agreement"
is defined as "an agreement to lend or forbear repayment of money or goods or to

---

[64] R. Doc. 2-3 at p. 12.
[65] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[66] R. Doc. 10-1 at pp. 8-10.
[67] *Id.* at pp. 9-10.
[68] *Id.* at p. 10.
[69] *Bass v. Chase Home Finance, LLC*, Civ. A. No. 09-3339, 2010 WL 3922709, at *3 (E.D. La. Oct. 1, 2010) (Vance, J.) (quoting *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006)).

otherwise extend credit, or make any other financial accommodation."[70]  The statute
provides that, "A debtor shall not maintain an action on a credit agreement unless
the agreement is in writing, expresses consideration, sets forth the relevant terms
and conditions, and is signed by the creditor and the debtor."[71]  Courts have
recognized that the Louisiana Credit Agreement Statute embodies a "legislative
reaction to the surge of lender liability litigation in the late 1980s and [was] enacted
primarily to limit the most frequent lender liability claims, which include assertions
of a breach of oral commitments to lend, to refinance or to forbear from enforcing
contractual remedies by instituting a so-called statute of frauds and requiring such
agreements to be in writing to be enforceable."[72]

   None of those purposes or concerns are implicated in this case.  As previously
mentioned, HRP has alleged that it purchased the subject property from Ms. Charles
on or about September 29, 2020, and that it assumed the mortgage indebtedness on
the property, in addition to all right, title, and interest in the property, pursuant to
an Act of Sale and Assumption.[73]  The Act of Sale and Assumption submitted with
the Complaint, dated September 29, 2020 and signed by Ms. Charles and Mr.
Swafford on behalf of HRP, specifies that HRP agreed to assume the obligations of
the Mortgage granted by Ms. Charles in favor of Bank of America that was later

---

[70] La. R.S. 6:1121(1).
[71] La. R.S. 6:1122.
[72] *Conerly Corp. v. Regions Bank*, Civ. A. No. 08-813, 2008 WL 4975080, at *2 (E.D. La. Nov. 20, 2008)
(Vance, J.) (quoting *King v. Parish Nat'l Bank*, 2004-0337 (La. 10/19/04), 885 So.2d 540, 546) (internal
quotation marks omitted).
[73] R. Doc. 2 at ¶ 5.

assigned to Nationstar.[74]  Unlike the cases cited by Nationstar,[75] this case does not involve a plaintiff seeking to enforce an oral agreement.  Instead, HRP seeks to enforce the terms of a written mortgage document, executed by Ms. Charles and Bank of America, the obligations of which Ms. Charles purportedly later transferred to HRP.  As explained by another Section of this Court, "The Fifth Circuit recently cautioned against extending the Louisiana Credit Agreement Statute to situations outside the primary purpose of the statute, which is to limit lender liability suits based on oral agreements."[76]  Because HRP is not seeking to enforce an oral agreement in this case, the Court finds that HRP has asserted plausible claims for relief that are not barred by the Louisiana Credit Agreement Statute.

Further, Nationstar has failed to direct the Court to the provision of the Mortgage that purportedly requires Nationstar's express written consent for Ms. Charles to transfer the mortgage obligation.[77]  After reviewing the Mortgage, the Court has found only one provision stating that the lender may accelerate the debt when all or part of the property is sold or transferred and either the property is not occupied by the purchaser as his or her principal residence or the purchaser's credit has not been approved "in accordance with the requirements of the Secretary [of HUD]."[78]  Whether Ms. Charles complied with this provision is not before the Court in this Motion.  The Mortgage also provides that, "The covenants and agreements of

---

[74] R. Doc. 2-4.
[75] *See*, R. Doc. 10-1 at pp. 8-9.
[76] *Conerly Corp. v. Regions Bank*, Civ. A. No. 08-813, 2008 WL 4975080, at *3 (E.D. La. Nov. 20, 2008) (citing *Keenan v. Donaldson*, 529 F.3d 569, 577 (5th Cir. 2008)).
[77] *Id*. at pp. 9-10.
[78] R. Doc. 2-3 at p. 17, ¶ 9(b).  *See*, *Id*. at p. 15, ¶ 2 (defining "Secretary" as the Secretary of Housing and Urban Development).

this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b)."  The Mortgage Note further states, "Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Notes, is also obligated to keep all of the promises made in this Note."[79]  The Court maintains that Nationstar has failed to show that HRP's claims are barred by the Louisiana Credit Agreement Statute.

### D. HRP has failed to state a claim for Nationstar's alleged violation of Louisiana's executory process.

Nationstar also seeks dismissal of HRP's claim for wrongful seizure, which is based upon HRP's assertion that Nationstar failed to submit authentic evidence with its Petition for Executory Process to authorize the use of executory process, as required by La. Code Civ. P. art. 2635.[80]  Nationstar asserts that Louisiana courts have "clearly and consistently" held that only the note and mortgage need be attached to the petition for executory process.[81]  Nationstar further asserts that under La. R.S. 9:5555, the amount, terms, and maturity of the note may be proven by affidavit or verified petition.[82]  Nationstar claims that it established the existence, amount, terms, and maturity of the Note and breach of the Mortgage through verification of its Petition for Executory Process.[83]  Nationstar also asserts that a Louisiana

---

[79] R. Doc. 2-3 at p. 13.
[80] R. Doc. 10-1 at pp. 11- 17; *See*, R. Doc. 2 at ¶¶ 27-34.
[81] R. Doc. 10-1 at pp. 11-12 (citing *Cameron Brown South, Inc. v. East Glen Oaks, Inc.*, 341 So.2d 450, 457-59 (La. App. 1 Cir. 1976); *Tri-South Mortgage Investors v. New Communities, Inc.*, 353 So.2d 292, 294-95 (La. App. 1 Cir. 1977)).
[82] R. Doc. 10-1 at pp. 12-13.
[83] *Id*. at p. 13 (citing *Asset One, Louisiana, Inc. v. Vulcan Minerals & Energy*, 66 Fed.Appx. 524 (5th Cir. 2003)).

appellate court recently held that affidavits are sufficient proof of the default, as required by La. R.S. 9:5555.[84]

Nationstar further asserts that any notice of default or acceleration is only necessary to the extent provided in the Mortgage, and that Louisiana law allows for evidence of written notification of default to be proved by verified petition in an executory proceeding.[85]   Nationstar contends that its verified Petition for Executory Process alleges that notice of default and right to cure was sent to the borrower (Ms. Charles), and further alleges that the notice of default specified the breach, the action required to cure the breach, the timeline of not less than 30 days to cure the default, that failure to cure would result in acceleration, and that there is a right to reinstate.[86]   Nationstar claims that this allegation complies with the notice of default requirements under Sections 9 and 18 of the Mortgage, and that the notice of acceleration or default, submitted with the Motion, shows that Nationstar's allegations in its verified Petition for Executory Process are accurate.[87]   Nationstar argues that HRP has failed to meet its burden of establishing that Nationstar's Petition for Executory Process was defective for failing to follow the procedure required for an executory proceeding.[88]   Nationstar maintains that its allegations regarding notice of acceleration and default comply with the requirements of La. Code Civ. P. art. 2637 and that HRP's claims should be dismissed with prejudice.

---

[84] R. Doc. 10-1 at pp. 13-14 (citing *Mortgage Elec. Registration Sys., Inc. v. Daigle*, 08-1203 (La. App. 5 Cir. 3/24/09), 10 So.3d 288, 293).
[85] R. Doc. 10-1 at p. 15 (*citing* La. Code Civ. P. art. 2637(A)).
[86] R. Doc. 10-1 at p. 15 (*citing* R. Doc. 2-3 at pp. 2-3, ¶ 5).
[87] R. Doc. 10-1 at p. 15 (*citing* R. Doc. 10-2 at pp. 15-17).
[88] R. Doc. 10-1 at pp. 15-16 (citing *Tri-South Mortgage Investors v. New Communities, Inc.*, 353 So.2d 292, 295 (La. App. 1 Cir. 1977)).

Under Louisiana law, "Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law."[89]  Article 2635 specifies that:

> In order for a plaintiff to prove his right to use executory process to enforce the mortgage . . . it is necessary only for the plaintiff to submit with his petition authentic evidence of:
>     (1) The note, bond, or other instrument evidencing the obligation secured by the mortgage, security agreement, or privilege.
>     (2) The authentic act of mortgage or privilege on immovable property importing a confession of judgment.
>     (3) The act of mortgage or privilege on movable property . . . .[90]

Louisiana courts have held that, "Where a creditor seeks to enforce a mortgage on immovable property, it is only necessary to submit certain authentic evidence to prove the right to use executory process: (1) the instrument evidencing the obligation secured by the mortgage, and (2) the authentic act of mortgage or privilege on immovable property importing the confession of judgment."[91]  Additionally, La. R.S. 9:555 provides, in pertinent part, that, "For purposes of executory process, the existence, amount, terms, and maturity of the note or other written obligation not evidenced by an instrument paraphed for identification with the act of mortgage or privilege may be proved by affidavit or verified petition," and that, "The affidavit shall

---

[89] La. Code Civ. P. art. 2631.
[90] La. Code Civ. P. art. 2635.
[91] *Gulf Coast Bank and Trust Co. v. Warren*, 2012-1570 (La. App. 4 Cir. 9/18/13), 125 So.3d 1211, 1216-17 (citing La. Code Civ. P. art. 2635(A); *Buckner v. Carmack*, 272 So.2d 326, 330 (La. 1973); *Whitney Nat'l Bank v. Blueridge, Inc.*, 606 So.2d 902, 904 (La. App. 4 Cir. 1992)); *Wells Fargo Bank, N.A. v. Settoon*, 2012-1980 (La. App. 1 Cir. 6/7/13), 120 So.3d 757, 759 (*citing* La. Code Civ. P. arts. 2634 & 2635A).

be deemed to provide authentic evidence of the existence, amount, terms, and maturity of the obligation for executory purposes."[92]

Although Nationstar did not submit a copy of its Petition for Executory Process with its Motion, HRP attached a copy of the Petition and the exhibits thereto to its Complaint.[93]  The exhibits to the Petition for Executory Process purportedly include the "[o]riginal promissory note dated November 24, 2009 for $292,027.00, payable to BANK OF AMERICA," a "[c]ertified copy of act of mortgage and/or privilege importing a confession of judgment," and the "[a]ssignment from Mortgage Electronic Registration Systems, Inc. as nominee for Bank of America, N.A."[94]  The Petition for Executory Process alleges that Ms. Charles owes Nationstar a principal of "$249,281.68 with interest thereon at 5.37500% per annum from July 01, 2018, until paid," and that Ms. Charles "defaulted on the note and mortgage by failing to pay, when due, the monthly installments required by the note and mortgage."[95]  The Petition for Executory Process includes a verification made "in accordance with La. C.C.P. art. 2637 and La. R.S. 10:9-629," stating that, "based upon the records provided to affiant by the secured party, that are kept or obtained in the ordinary course of business of the secured party, the allegations of fact contained herein are true and correct to the best of his/her knowledge, information and belief."[96]

---

[92] La. R.S. 9:5555(A) & (C).
[93] *See, generally,* R. Doc. 10.  *See,* R. Doc. 2-3 at pp. 1-23.
[94] R. Doc. 2-3 at pp. 1-23.
[95] *Id.* at pp. 1-2, ¶¶ 3 & 5.
[96] R. Doc. 2-3 at p. 5.

The Petition for Executory Process further alleges that Nationstar "mailed notice of the default to obligor," and that the notice specified the breach, the action required to cure the breach, a date to cure the breach that was at least 30 days from the date the notice was mailed, that a failure to cure the breach on or before that date could result in acceleration of sums secured by the mortgage, that Ms. Charles had the right to reinstate after acceleration and the right to assert non-existence of the default or any other defense to acceleration and foreclosure, and that if the breach was not cured on or before the date specified, Nationstar could declare all of the sums secured by the mortgage immediately due and payable without further demand and that the property could be seized and sold to satisfy the indebtedness due.[97]  It does not appear that the notice of default was attached as an exhibit to the Petition for Executory Process, as HRP argues that it was not attached (in violation of La. Code Civ. P. art. 2635) and Nationstar asserts that it was not required to submit a copy of the notice of default with the Petition.  Nationstar, however, submitted with its Motion a "Demand Letter"[98] dated October 1, 2018, which appears to be the purported notice of default sent by Nationstar to Ms. Charles.[99]

Although the notice of default that Nationstar purportedly sent to Ms. Charles was not attached to HRP's Complaint,[100] the Court can consider it in ruling on Nationstar's Motion to Dismiss because it falls within an exception to the general rule prohibiting the Court from considering documents outside of the Complaint.

---

[97] *Id.* at ¶ 5.
[98] R. Doc. 10-1 at p. 15 ("See a copy of the Demand Letter, attached as Exhibit 'E.'").
[99] R. Doc. 10-2 at pp. 15-17.
[100] *See, generally*, R. Doc. 1.

Specifically, Nationstar attached the notice of default to its Motion,[101] the notice of default, or lack thereof, is referenced in the Complaint,[102] and the lack of a notice of default is central to HRP's claims that Nationstar violated the NHA and HUD violations and failed to comply with the requirements for proceeding with foreclosure by executory process.   Accordingly, the Court may consider the notice of default attached to Nationstar's Motion without running afoul of the rules governing motions to dismiss under Fed. R. Civ. P. 12(b)(6).[103]

The Court further finds that HRP has failed to state a claim for wrongful seizure on the basis that Nationstar failed to submit authentic evidence with its Petition for Executory Process, as required by La. Code Civ. P. art. 2635.   Louisiana courts have consistently held that a party need only attach the note and the mortgage to a petition for executory process under Article 2635.[104]   It is evident from the pleadings before the Court, all which were attached to HRP's Complaint, that Nationstar complied with the requirements of Article 2635 by submitting the original promissory note executed by Ms. Charles and a certified copy of the mortgage executed by Ms. Charles with its Petition for Executory Process.[105]   As such, HRP has failed to state a claim for wrongful seizure based upon a lack of authentic evidence supporting Nationstar's use of the executory proceeding.   To the extent HRP also alleges that neither Ms. Charles nor HRP received written notice of default from

---

[101] R. Doc. 10-2 at pp. 15-17.

[102] R. Doc. 2 at ¶¶ 10-13, 15, 17, 24, 27, & 29-32.

[103] *See, Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[104] *See, supra*, note 90.

[105] R. Doc. 2-3 at pp. 12-21.

Nationstar prior to Nationstar accelerating the Note,[106] the pleadings before the Court contradict that assertion.  As previously mentioned, Nationstar alleged in its verified Petition for Executory Process that it sent Ms. Charles a notice of default that advised her of the breach and the steps to take to cure the breach.[107]  Nationstar also submitted a copy of the notice of default with its Motion, which was sent to Ms. Charles via certified mail and contains all of the information as alleged in the Petition for Executory Process.[108]  HRP did not file an opposition brief or otherwise dispute the information contained in the pleadings.  As such, and even viewing HRP's well pleaded facts in the light most favorable to HRP, the Court finds that HRP has failed to state a claim for wrongful seizure based upon Nationstar's alleged failure to send a notice of deficiency prior to seeking acceleration.

### E.  Nationstar's request for a more definite statement.

Alternatively, if the Court does not dismiss HRP's Complaint in its entirety, Nationstar asks the Court to order HRP to file a more definite statement of its claims and allegations pursuant to Fed. R. Civ. P. 12(e).[109]  Nationstar asserts that the Complaint contains few allegations against it and asserts claims regarding the Mortgage executed by Ms. Charles, who is not a party to this litigation, "without pointing out any factual allegations to support Plaintiff's claims."[110]  Nationstar

---

[106] R. Doc. 2 at ¶¶ 27, 29, & 31.

[107] R. Doc. 2-3 at p. 2, ¶ 5.

[108] R. Doc. 10-2 at pp. 15-17.

[109] R. Doc. 10-1 at pp. 17-18.  The Court notes that Nationstar "requests that the Court order Plaintiff to submit a more definite statement of its claims and allegations against Rushmore."  *Id*. at p. 17.  Elsewhere in the Motion, Nationstar similarly "requests that the Court order Plaintiff to file a more [sic] definite statement so that Rushmore may adequately respond to the allegations asserted against it."  *Id*. at p. 2.  These appear to be typographical errors and an intended reference to Nationstar.

[110] *Id*. at p. 17.

claims that the Complaint is nothing more than a "bare bones allegation" that various harms were committed against Ms. Charles, and further asserts that Nationstar "cannot possibly mount a defense to the Complaint as it stands."[111]   As such, Nationstar asks that the Court order HRP to file an amended complaint to "intelligibly articulate" HRP's claims against Nationstar.[112]

Federal Rule of Civil Procedure 12(e) provides that a motion for a more definite statement may be filed when "a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[113]   The moving party "must point out the defects complained of and the details desired."[114]   "When evaluating a motion for a more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure . . . ."[115]   Rule 8 provides, in pertinent part, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."[116]   "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[117]   Rule 12(e) motions are generally disfavored because "in view of the great liberality of F.R.Civ.P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should

---

[111] *Id*. at p. 18.

[112] *Id.*

[113] Fed. R. Civ. P. 12(e).

[114] *Id.*

[115] *Babcock v. Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006).

[116] Fed. R. Civ. P. 8(a)(2).

[117] *In re JCC Environmental, Inc.*, 575 B.R. 692, 697 (E.D. La. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)) (internal quotation marks omitted).

not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."[118] "The standard for evaluating a 12(e) motion is whether the complaint is 'so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'"[119] As a result, "to determine whether a 12(e) motion is appropriate, the Court considers whether the complaint is sufficient to withstand a motion to dismiss according to the appropriate pleading standard."[120]

A review of the Complaint filed by HRP confirms that the requirements of Rule 8 have been met. The Complaint gives Nationstar adequate notice of HRP's claims for violations of the NHA and HUD regulations, as well as HRP's claims regarding Nationstar's use of executory process under Louisiana law, and provides a short and plain statement of the grounds upon which HRP would be entitled to relief. Further, the Court has determined that HRP has alleged sufficient facts at this juncture to withstand a motion to dismiss as to its claims for Nationstar's alleged violations of the NHA and HUD regulations. The Court finds that the Complaint meets Rule 8's notice pleading requirements and provides sufficient information to allow Nationstar to respond to the allegations. Nationstar's Motion demonstrates its understanding of the claims asserted by HRP and its knowledge of facts underlying those claims. Because Nationstar can respond to the Complaint in good faith and

---

[118] *Babcock*, 235 F.R.D. at 633 (quoting *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)) (internal quotation marks omitted). *See*, *In re JCC Environmental, Inc.*, 575 B.R. at 697 (collecting cases).

[119] *Phillips v. ABB Combustion Engineering, Inc.*, Civ. A. No. 13-594, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013) (Feldman, J.) (quoting *Babcock*, 235 F.R.D. at 633).

[120] *Phillips*, Civ. A. No. 13-594, 2013 WL 3155224 at *2.

without prejudice, the Court denies Nationstar's request for a more definite statement under Rule 12(e).

### F. Leave to amend.

While HRP has not sought leave to amend, the Court will "freely give leave [to amend] when justice so requires."[121]  That said, leave to amend "is by no means automatic."[122]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[123]  "I[t] is within the district court's discretion to deny a motion to amend if it is futile."[124]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[125]

Applying those factors here, the Court finds that any amendment regarding HRP's claim for wrongful seizure would be futile for the reasons stated in this Order. The pleadings and the law make clear that Nationstar complied with the legal requirements in the filing of its Petition to Enforce Security by Executory Process. Therefore, because the Court has determined that Nationstar complied with the

---

[121] Fed. R. Civ. P. 15(a).

[122] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[123] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[124] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[125] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

statutory requirements in its Petition for Executory Process, any attempt to amend the Complaint would be futile.[126]

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper's Motion to Dismiss Plaintiff's Complaint[127] is **GRANTED in part** and **DENIED in part.**   The Motion is **GRANTED** to the extent that Nationstar seeks dismissal of HRP's claim for wrongful seizure based upon its assertion that Nationstar was not entitled to proceed by executory process, and that claim is **DISMISSED WITH PREJUDICE.**   The Motion is otherwise **DENIED**.

New Orleans, Louisiana, September 15, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[126] *See, Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (stating that a district court may properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss"); *Terry Black's Barbecue LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 910 (W.D. Tex. 2021) (quoting *4431, Inc. v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 368, 385–86 (E.D. Pa. 2020) (denying leave to amend where "[t]he terms of the Policies are not in dispute, and there is nothing else Plaintiffs could allege that would bring their claimed losses within the Policies' coverage")) (internal quotation marks omitted).
[127] R. Doc. 10.